UNITED STATES DISTRICT COURT
NORTHERN DISTRICT INDIANA

MARIANNE FIDISHIN,

Plaintiff,

v.　　　　　　　　　　　　　　　CAUSE NO.: 2:18-CV-97-TLS

GARY COMMUNITY SCHOOL
CORPORATION,

Defendant.

**OPINION AND ORDER**

The Plaintiff, Marianne Fidishin, is suing her former employer, Gary Community School Corporation [Complaint and Demand for Jury Trial, ECF No. 1], alleging that the Defendant unlawfully discriminated against her on the basis of her race (Caucasian) and sex (female), and created a hostile work environment based on her race, all in violation of Title VII, and also violated her rights under the Family Medical Leave Act (FMLA). The Defendant filed a Motion to Dismiss [ECF No. 9] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) asserting that the Court lacks jurisdiction over the case and that the Complaint fails to state a claim upon which relief may be granted. The Motion has been fully briefed and is ripe for ruling.

**ANALYSIS**

**A. Subject Matter Jurisdiction**

Rule 12(b)(1) provides that a party may assert the defense of lack of subject matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."

*Illinois v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). Where, as here, the defendant has made only a facial challenge to jurisdiction, the court looks only "to the complaint [to] see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

Here, the Plaintiff is pursuing remedies under Title VII of the Civil Rights Act of 1964, which makes it unlawful "for an employer . . . to discriminate," on the basis of race or sex. 42 U.S.C. § 2000e–2(a)(1). The statute contains a jurisdictional provision, which empowers federal courts to adjudicate civil actions "brought under" Title VII. § 2000e–5(f)(3). "Covering a broader field, the Judicial Code gives federal courts subject-matter jurisdiction over all civil actions 'arising under' the laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006) (citing 28 U.S.C. § 1331 (providing federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States")). "Title VII actions fit that description." *Id.* Likewise, the FMLA provides for private causes of action to be brought in federal courts, *see* 29 U.S.C. § 2617(a)(2), and claims arising under the FMLA are subject to this Court's federal question jurisdiction under 28 U.S.C. § 1331.

Accordingly, the Defendant's request to dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction is denied.

### B. Stating a Claim Under Title VII and the FMLA

When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court must accept the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The complaint need not contain detailed facts, but surviving a

Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

To begin, the Court notes that much of the Defendant's Motion to Dismiss appears focused on the merits of the Plaintiff's complaint allegations. (*See* Mot. 1 ("Fidishin's complaint is without merit."); *id.* at 8–10 (discussing burdens of proof and elements of a prima facie case).) But a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. A plaintiff must include enough details about the subject matter of a case to present a story that holds together, but the proper question to ask is "*could* these things have happened, not *did* they happen." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826–27 (7th Cir. 2014) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010)).

To establish a Title VII disparate treatment claim, a plaintiff must allege that an employer took job-related action against her that was motivated by intentional discrimination. *See Ernst v. City of Chi.*, 837 F.3d 788, 794 (7th Cir. 2016). As the Seventh Circuit explained in *Tomayo v. Blagojevich*, "to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." 526 F.3d 1074, 1084 (7th Cir. 2008). Although *Tamayo* specifically addressed sex discrimination, the same pleading standards apply to allegations of discrimination based on race. *See id.*, 526 F.3d at 1084 (reaffirming the minimal pleading standard for simple claims of race or sex discrimination reasserted in *EEOC v. Concentra Health*

*Servs., Inc.*, 496 F.3d 773, 781–82 (7th Cir. 2007)). While "a complaint must contain something more than a general recitation of the elements of the claim," there is a "minimal pleading standard for simple claims of race and sex discrimination." *Tamayo*, 526 F.3d at 1081 (citing *Concentra Health Servs.*, 496 F.3d at 781–82). Therefore, a "plaintiff is not required to include allegations—such as the existence of a similarly-situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014).

Title VII is also violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). To state a hostile work environment claim based on race, a plaintiff must allege that she was subject to unwelcome harassment based on her race, and that the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment. *See Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017). Additionally, there must be a basis for employer liability. *See id.*

The FMLA prohibits employers from interfering with, restraining, or denying the exercise of a right under the FMLA. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1). An employer can violate the FMLA by failing to return an employee to her prior, or an equivalent, position. *See* 29 U.S.C. § 2614. The FMLA also makes it unlawful for an employer to retaliate against an employee who exercises her FMLA rights. *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (citing 29 U.S.C. § 2615(a)(2), (b)); *see also Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) ("The FMLA makes it unlawful for an employer to interfere with an

employee's attempt to exercise any FMLA rights. It also forbids an employer from retaliating against an employee who exercises FMLA rights."). "The difference between a retaliation and interference theory is that the first requires proof of discriminatory or retaliatory intent while an interference theory requires only proof that the employer denied the employee his or her entitlements under the Act." *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010) (internal quotation marks and brackets omitted).

The Plaintiff alleges that she was the only Caucasian in the Defendant's central administrative office where she worked. (Compl. ¶ 13.) The Complaint sets forth various actions that impacted the Plaintiff's employment, including the removal of duties that were then assigned to a less qualified African-American employee, despite meeting the Defendant's legitimate performance expectations. (*Id.* ¶¶ 11, 17.) The Plaintiff alleges that she went on FMLA leave and upon her return to work on October 26, 2016, she was informed that she would begin reporting to an employee who had been her peer before she took FMLA leave. (*Id.* ¶ 20.) The Complaint sets forth other details regarding the work environment, including being subject to a series of personnel and time keeping rules that did not apply to any other executive staff. (*Id.* ¶¶ 21–32.) The Plaintiff alleged that these requirements had never been applied to her previously, or to any other senior administrator during the Plaintiff's four-year tenure with the Defendant. (*Id.* ¶ 33.) Additionally, her responsibilities were further reduced in October 2016 (*Id.* ¶¶ 26–29), she was belittled in front of the entire leadership team (*Id.* ¶ 31), denied the ability to attend a professional development workshop (*Id.* ¶ 35), and not paid expense reimbursement she was due (*Id.* ¶ 36). In December 2016, the Plaintiff was informed that her contract would not be renewed. (*Id.* ¶ 37.) To avoid damage to her personal and professional reputation, the Plaintiff resigned effective June 30, 2018. (*Id.* ¶¶ 40–41.)

5

According to the Complaint, the Defendant subjected her to terms and conditions of employment that were less favorable than those afforded to similarly-situated African-American employees, which constituted disparate treatment and created a hostile work environment. The Plaintiff also claims that she was subject to terms and conditions of employment that were less favorable than those afforded to similarly-situated male employees. The Plaintiff alleges that the actions outlined in her Complaint were retaliation for exercising her FMLA rights, and interfered with her rights under the FMLA. (*Id.* ¶¶ 39, 56, 58.)

### 1. *Disparate Treatment—Race*

The Court concludes that the Plaintiff's Complaint includes sufficient detail in support of a claim for race discrimination under Title VII to survive dismissal. The pleading standards in employment discrimination cases are not the same as the evidentiary burden a plaintiff must subsequently meet. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). The Complaint, with respect to the race discrimination claim, describes events that could have happened and which discovery can be reasonably expected to reveal. *See Swanson*, 614 F.3d at 404. A reduction in job responsibilities, as alleged throughout the Complaint, may qualify as a materially adverse action. *See, e.g.*, *Tart v. Ill. Power Co.*, 366 F.3d 461, 473 (7th Cir. 2004). Changing "the *conditions* in which [an employee] works . . . in a way that subjects [her] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment" can also qualify as materially adverse. *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). As "an adverse employment action may be 'unique to a particular situation,'" *Alamo v. Bliss*, 864 F.3d 541, 553 (7th Cir. 2017) (first quoting *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013); then citing *Parrett v. City of Connersville, Ind.*, 737 F.2d 690, 693 (7th Cir. 1984) (discussing that employee was "given a windowless room to

sit in that formerly had been a storage closet" and that the employee "spent his shift sitting at the desk with nothing to do"), it would premature at this stage of the litigation to conclude that the various actions alleged in the Complaint do not plausibly state an adverse employment action. Even if not every complained-of act qualifies as a materially adverse employment action, the non-renewal of the Plaintiff's contract would, because the Defendant was terminating the employment relationship.

The Plaintiff alleges that these adverse employment actions were motivated by her race, which is plausible to infer at this stage of the proceedings as she was the only white employee working in the ranks of the central administrative offices, and was treated differently than the other employees. Pleading such facts is all that is required at this stage of the proceedings. *See, e.g.*, *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (holding that a plaintiff's conclusory allegations that an adverse action is linked to membership in a protected class is sufficient to prevent dismissal of a discrimination claim). The Plaintiff may proceed on, and the Defendant must answer, the claim of disparate treatment based on the Plaintiff's race. It may be that the Plaintiff, once discovery has been conducted, cannot produce evidence to survive summary judgment. But that question should be postponed to another day. The Defendant has fair notice of the Plaintiff's claims and the grounds upon which those claims rest, and the details in her Complaint present a story that "holds together." *See Swanson*, 614 F.3d at 404.

2. *Hostile Work Environment—Race*

The Court finds that the Complaint does not contain allegations which, taken together, are sufficient to state a stand-alone hostile work environment claim under Title VII based on the Plaintiff's race. "In determining whether a workplace is objectively hostile," the Court must consider "the totality of the circumstances, including: the frequency of the discriminatory

7

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo*, 864 F.3d at 549–50 (citation and internal quotation marks omitted). The Complaint does not describe a workplace permeated with discriminatory intimidation, ridicule, and insult. The Complaint does not identify any comments directed at the Plaintiff that had a racial character or purpose, or otherwise implicated a negative attitude toward Caucasians. The Plaintiff's claims do not give rise to a plausible inference that she was subjected to race-based words or actions that were so severe and pervasive that they altered the conditions of her employment, or created an abusive working environment. The alleged nonverbal harassment—being asked to create a report that was duplicated by another employee, being required to work within specific hours, receiving implied criticism regarding her job performance in front of a group, and being required to submit professional development requests to the assistant to the Superintendent—are not sufficiently severe to give rise to a hostile work environment claim.

### 3. *Disparate Treatment—Sex*

Even with the minimal pleading requirement, the Court cannot find that the Complaint sets forth a claim that the Plaintiff was subject to different compensation, terms, conditions, or privileges of employment because of her sex. The Plaintiff's allegation that she was subject "to terms and conditions of employment that were less favorable than those afforded similarly-situated male employees" (Compl. ¶ 52) is a bare legal conclusion. The Plaintiff failed to allege any factual basis for thinking that her sex had anything to do with any of the complained-of employment actions. The Complaint does not provide factual allegations that identify any male employee who was treated better than she was or describe in what way they were treated better. Accordingly, there is no allegation in the Complaint to plausibly suggest a violation of Title VII

based on the Plaintiff's sex. In a Declaration attached to her Response to the Motion to Dismiss, the Plaintiff identifies by name, race, and gender the employee who was assigned the supervisory duties for transportation and security that were removed from her in July 2016, which shows that the replacement was a man. (See Declaration ¶ 2, ECF No. 16-1).[1] However, it is not proper, at this stage, for the Court to look beyond the pleadings to determine if the Plaintiff has stated a claim upon which relief may be granted.

### 4. Family Medical Leave Act

The Court finds that the Complaint sets forth a claim under the FMLA based on the allegations that the Defendant reduced her professional duties and responsibilities on several occasions after she returned from FMLA leave, and required her to follow personnel and time keeping rules that did not apply to staff who did not take leave.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Defendant's Motion to Dismiss [ECF No. 9]. Count Two: Hostile Work Environment and Count Three: Sex Discrimination, are dismissed. The Defendant's Motion to Strike Declaration Under Oath of Marianne Fidishin [ECF No. 17] is DENIED AS MOOT.

SO ORDERED on November 29, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[1] The Complaint only identifies the replacement by race.